IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| AARON DELONG, #Y11114, <br><br> Plaintiff, <br><br> v. <br><br> RICHARD MORGONTHALER, KIMBERLY HVARRE, WEXFORD HEALTH SOURCES, INC., DEBBIE ISAACS, DENNIS LARSON, GARY GERST, KAREN AKBRIGHT, SHANE SMITH, and JANE DOE, <br><br> Defendants. | Case No. 23-cv-02111-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Aaron DeLong, an inmate of the Illinois Department of Corrections who is currently incarcerated at Centralia Correctional Center, brings this civil action pursuant to 42 U.S.C. §1983 for violations of his constitutional rights that occurred while he was housed at Big Muddy Correctional Center. This case is before the Court for preliminary review pursuant to 28 U.S.C. § 1915A, which requires the Court to screen prisoner complaints to filter out non-meritorious claims and dismiss any portion of a complaint that is legally frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from a defendant who by law is immune. 28 U.S.C. § 1915A.

### THE COMPLAINT

Plaintiff asserts that since 2020, he has not been given effective treatment for his ongoing

abdominal pain. Later, he was also denied proper medical care for his back and shoulder pain as well. Plaintiff states that he was first seen by a nurse for lower left abdomen pain on January 20, 2020. (Doc. 1, p. 6). Plaintiff was referred to the medical doctor and saw Physician Assistant Gary Gerst. Gerst advised Plaintiff to increase his water intake, eat all fruits and vegetables, and exercise. Gerst also prescribed Plaintiff fiber pills for three months. (*Id.*).

On February 9, 2020, Plaintiff was again seen by a nurse because his pain had increased, and he was unable to stand. (Doc. 1, at p. 7). The nurse gave Plaintiff 200mg of ibuprofen for the pain. Plaintiff had another appointment with Gerst on February 13, 2020. Gerst ordered an x-ray of Plaintiff's abdomen. The x-ray was taken the next day. An appointment to review the x-ray was scheduled for February 28, 2020, but had to be rescheduled for April 28, 2020. (*Id.*). On April 28, Plaintiff met with Gerst who informed him that "there was no obstruction and a mild amount of stool that could be causing constipation." Plaintiff informed Gerst that the fiber pills did not provide him any relief from the pain. Gerst recorded that Plaintiff had regular bowel movements and zero constipation. (*Id.*).

Plaintiff was seen by a nurse on June 4, June 13, and July 23, 2020, for indigestion and heartburn. He was given pink bismuth and calcium antacids. (Doc. 1, p. 7). Plaintiff had another appointment with Gerst on July 28, 2020. Plaintiff requested calcium tablets, but Gerst prescribed him Prilosec and told him that he can purchase calcium tablets at the commissary. Plaintiff states that multiple inmates are prescribed calcium tablets from the health care unit. (*Id.*).

Plaintiff was again seen by a nurse on September 10, 2020, for abdominal pain and had an appointment with Gerst on September 15, 2020. (Doc. 1, p. 8). Plaintiff explained to Gerst that the current treatment plan was not decreasing his pain, and the fiber pills were not helping. He stated that he exercises every other day, drinks plenty of water, and eats all the fruits and vegetables offered but his pain continues. Gerst again advised Plaintiff to continue taking the fiber pills and

told him to drink lots of water, eat fruits and vegetables, and exercise. (*Id.*).

On November 5, 2020, Plaintiff saw a nurse for his stomach pain. (Doc. 1, p. 8). He stated that the pain was causing him to have difficulty urinating. The nurse said she would return to take a urine sample, but she never did. Plaintiff wrote a request on November 22, 2020, asking about the urine test. On November 24, 2020, a nurse came to his cell to collect a urine sample. (*Id.*).

On December 22, 2020, Plaintiff had an appointment with Dr. Larson for the pain in his lower left abdomen. (Doc. 1, p. 9). Dr. Larson ordered a second x-ray, blood work, and a urine sample. Plaintiff told Dr. Larson that he had a hard time releasing gas and could not sleep on his back or left side. Dr. Larson ordered fiber pills for a third time, even though Plaintiff explained that the fiber pills did not offer him any relief. (*Id.*). Blood and urine tests were performed, but Plaintiff did not receive an x-ray.

On January 21, 2021, Plaintiff again saw a nurse for his stomach pain. At this appointment, Plaintiff asked about his lab results and why he had not received the x-ray ordered by Dr. Larson. (Doc. 1, p. 11). The nurse said she would check on his questions. On January 26, 2021, an x-ray was taken. Plaintiff had another appointment with Gerst, who again prescribed Plaintiff Prilosec. Plaintiff told Gerst that he stopped taking Prilosec in October 2020 because it did not help. Gerst told Plaintiff to throw the medicine away if he does not need it. (*Id.*).

Plaintiff had a follow-up appointment with Dr. Larson on February 8, 2021. (Doc. 1, p. 11). Dr. Larson ordered another blood test because Plaintiff's ALT levels were "slightly high." Dr. Larson again told Plaintiff to drink plenty of water, eat fruits and vegetables, exercise, and take the fiber pills. Plaintiff informed Dr. Larson that he has been following those instructions since January 2020, when he first saw Gerst for stomach pain but with no results. (*Id.*).

On February 24, 2021, Plaintiff had an appointment with a nurse and requested Gas-X to ease his pain at night due to his inability to release gas while laying down. (Doc. 1, p. 12). The

nurse told Plaintiff that he does not have a prescription for gas related problems and so she will refer him to the medical doctor. (*Id.*).

Plaintiff had an appointment with Gerst on March 4, 2021. (Doc. 1, p. 13). Gerst prescribed him a stool softener and told Plaintiff to let Dr. Larson know if the medicine works. Plaintiff explained that the pain he is experiencing does not feel like constipation but more of a stabbing and pulling pain. Gerst still prescribed the stool softener. Plaintiff then saw a nurse for his stomach pain on March 19, 2021. (*Id.*).

On March 24, 2021, Plaintiff had another appointment with Gerst. (Doc. 1, p. 13). At this time, Plaintiff was still on fiber pills, Prilosec, colace, and acetaminophen. Gerst told Plaintiff that the doctor needs to "do a G.I. or something to diagnose [his] problem." (*Id.*).

On March 26, 2021, Plaintiff saw Dr. Larson who ordered another set of labs for Plaintiff's high ALT level. (Doc. 1, p. 14). Dr. Larson tells Plaintiff that the x-ray showed moderate stool and gas compared to the first x-ray. Dr. Larson ordered an ultrasound and told Plaintiff that the colon area is of concern. Plaintiff's labs were taken on March 31, but Plaintiff did not receive an ultrasound until May 10, 2021. (*Id.* at p. 14-15). On June 9, 2021, Plaintiff was seen by Gerst. (*Id.* at p. 16). Gerst told Plaintiff he does not know why health care continues to send Plaintiff to him when Dr. Larson needs to see Plaintiff regarding the ultrasound results. (*Id.*).

On July 7, 2021, Plaintiff had an appointment with Dr. Larson. (Doc. 1, p. 17). At the appointment, Dr. Larson acknowledged that he does not know what is causing Plaintiff's pain. Dr. Larson ordered an x-ray of Plaintiff's lower back to see if that could be causing Plaintiff's stomach pain. The x-ray was taken on July 8, 2021. (*Id.*). Plaintiff did not see Dr. Larson the rest of the year. (*Id.* at p. 18). He wrote to Health Care Unit Administrator Debbie Issacs on October 12, 2021, but did not receive a response. He wrote to her again on January 17, 2022. (*Id.*).

On May 31, 2022, Plaintiff saw Dr. Larson regarding shoulder pain. (Doc. 1, p. 19). Dr.

Larson ordered an x-ray for his shoulder but refused to speak to Plaintiff about his stomach pain. Plaintiff continued to write to Debbie Isaacs about not being seen for his stomach pain. On October 16, 2022, Plaintiff wrote to Warden Morganthaler and Assistant Warden Hvarre about the lack of medical care. He did not receive a response. (*Id.*).

Plaintiff was seen again for his shoulder pain by Dr. Larson on October 25, 2022. (Doc. 1, p. 20). Dr. Larson prescribed physical therapy but would not refer Plaintiff for an MRI. Plaintiff told Dr. Larson that he still had stomach and back pain, and Dr. Larson told him to submit another request slip. (*Id.* at p. 20-21). Plaintiff had an appointment with Gerst about his back pain on November 2, 2022. Gerst told Plaintiff that the x-ray from July 8, 2021, showed that Plaintiff had degenerate discs. Gerst ordered a second x-ray. (*Id.* at p. 21). This second x-ray of Plaintiff's back was taken on November 9, 2022. (*Id.*).

Plaintiff had a follow-up visit with Gerst on December 6, 2022. (Doc. 1, p. 22). Gerst was unable to compare the x-ray taken in July and the most recent x-ray of Plaintiff's back. Plaintiff was then referred to Dr. Larson. Plaintiff saw Dr. Larson in either December 2022 or January 2023. Dr. Larson ordered physical therapy for Plaintiff but would not change his pain medication. He again prescribed 325mg of acetaminophen even though Plaintiff explained that the medicine does not provide him any relief. (*Id.*).

Plaintiff saw Nurse Practitioner Menees for the first time on January 27, 2023. (Doc. 1, p. 23). Menees ordered an x-ray of Plaintiff's stomach and referred Plaintiff for a G.I. consultation. Plaintiff had another appointment with Menees on February 23, 2023. Menees informed Plaintiff that the x-ray showed moderate stool and gas buildup. Menees also told Plaintiff that the gastrointestinal doctors in Mount Vernon and Carbondale were "backed up." Menees prescribed fiber and Colace. (*Id.*).

Plaintiff saw Menees again on March 9, 2023. (Doc. 1, p. 24). Menees confirmed that the

G.I. consultation has been approved but not scheduled. (*Id.*). On March 23, 2023, Menees prescribed Plaintiff ibuprofen and instructed Plaintiff to alternate between taking the ibuprofen and the acetaminophen. (*Id.* at p. 25). At an appointment on April 17, 2023, Menees confirmed that his G.I. appointment had been scheduled. (*Id.* at p. 26). Menees also ordered blood work and a urine sample. Menees prescribed Gas-X and Robaxin. (*Id.*).

Plaintiff was seen by Dr. Larson on May 5, 2023, for his back pain. (Doc. 1, p. 27). Dr. Larson told Plaintiff that because his "ALT" levels are high, he should not take ibuprofen. Dr. Larson referred Plaintiff for an MRI. (*Id.*).

Plaintiff had an appointment with a gastrointestinal specialist, Nurse Practitioner Kelly, on May 15, 2023. (Doc. 1, p. 28). Kelly prescribed three medications for Plaintiff to take for two weeks before she would perform an ultrasound – GaviLAX, simethicone, and Metamucil. (*Id.*). On May 25, 2023, Plaintiff was told by a nurse that Dr. Larson will not order the medication prescribed by Kelly. (*Id.* at p. 29). At some point, Plaintiff received GaviLAX (MiraLAX generic), but he did not receive the other two medicines prescribed by Kelly. (*Id.*). On June 14, 2023, Plaintiff received some of his simethicone prescription (generic Gas-X), but not enough to take as prescribed for two weeks. (*Id.* at p. 31).

### PRELIMINARY DISMISSALS

Plaintiff attempts to bring claims pursuant to the First Amendment against Morganthaler, Hvarre, Smith, and Isaacs for their mishandling of his grievances, refusing to make grievance forms available, and giving him false information about the grievance procedure. (Doc. 1, p. 39). "Prison grievance procedures are not mandated by the First Amendment…and so the alleged mishandling of [Plaintiff's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley,* 635 F. 3d 950, 953 (7th Cir. 2011). Therefore, Plaintiff's First Amendment claims for failing to process his grievances or make the

grievance process available to him are dismissed with prejudice.

Plaintiff has also failed to state a claim for retaliation under the First Amendment. Plaintiff asserts that Defendants refused to speak with him "as discipline for writing grievances." (Doc. 1, p. 39). In support of this claim, Plaintiff alleges that on one occasion, January 8, 2021, he requested to speak with Warden Morganthaler, who was in his housing wing. Because Plaintiff had already filed grievances about his issues, Morganthaler said he did not need to speak with Plaintiff and began talking with other inmates. (*Id.* at p. 32). These allegations are insufficient to state a claim for retaliation. Even assuming Morganthaler was acting with retaliatory motive, "not every slight by a prison official supports a retaliation claim." *Gray v. Baldwin,* No. 22-1398, 2023 WL 2754925, at *2 (C.D. Ill. Mar. 31, 2023) (citing *Cape v. St. Joseph Cauty Jail*, No. 21-cv-693-JD-MGG, 2021 WL 4439773, at *2 (N.D. Ind. Sept. 28, 2021); *Gully v. Hundley,* No. 18-cv-539-NJR, ,2020 WL 1503577, at *5 (S.D. Ill. Mar. 30, 2020), *appeal dismissed*, 2020 WL 9423905 (7th Cir. Dec. 14, 2020)). "It would trivialize the First Amendment to hold that harassment for exercising the right to free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from the exercise." *Bart v. Telford,* 677 F. 2d 622, 625 (7th Cir. 1982). Morgenthaler's refusal to speak to Plaintiff on January 8 was not such a deprivation as to likely deter First Amendment activity in the future. Accordingly, Plaintiff's First Amendment retaliation claim is dismissed without prejudice.

The Court also dismisses any claims Plaintiff is attempting to bring for failing to receive his prescriptions on the evening of June 3, 2023, due to staffing shortages. (Doc. 1, p. 30, 37). The "occasional missed dose of medicine, without more, does not violate the Eighth Amendment." *West v. Millen*, 79 F. App'x 190, 194 (7th Cir. 2003) (citing *Zentmyer v. Kendall Cnty.*, 220 F. 3d 805, 811-12 (7th Cir. 2000). Plaintiff already pleads throughout the Complaint that the medication he was prescribed was not alleviating his symptoms, and he does "does not state that he suffered

any adverse symptoms from missing the one dose of medication. Nor does he allege that he has missed any other doses of his medication."[1] *Fields v. Miller*, No. 20-cv-1211-pp, 2021 WL 1400907, at *2 (E.D. Wisc. Apr. 14, 2021). According, claims regarding his missed medication on June 3, 2023, are dismissed without prejudice.

Finally, the Court dismisses Plaintiff's claims regarding his medical records. Plaintiff states that "Isaacs, Akbright, and Jane Doe" contributed to Eighth Amendment violations by refusing to provide Plaintiff copies of his medical records and falsifying the records. (Doc. 1, p. 40). In support of this claim, he alleges that he began requesting his medical records on November 6, 2022, and did not receive an authorization form for medical records to sign until June 14, 2023. (*Id.* at p. 31). The delay in receiving copies of his medical records does not amount to cruel and unusual punishment, and the assertion that his medical records were falsified and contributed to constitutionally inadequate care is conclusory and not supported by any factual assertions in the Complaint. Accordingly, these claims are dismissed.

## DISCUSSION

Based on the allegations in the Complaint and Plaintiff's designations of his claims, the Court delineates the following count:

> **Count 1:** Eighth Amendment claim against Larson, Gerst, Wexford, Morganthaler, Hvarre, and Isaacs for deliberate indifference in treating Plaintiff's stomach, back, and shoulder pain.

The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the**

---

[1] The Court construes Plaintiff's allegations regarding the delay in prescribing and dispensing the medication recommended by Nurse Practitioner Kelly separate from the June 3 incident and included in Plaintiff's Eighth Amendment claim under Count 1.

**Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

### Count 1

In order to successfully plead an Eighth Amendment claim for deliberate indifference to a serious medical need, the plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). "[N]egligence, or even gross negligence does not equate to deliberate indifference" and does not state a claim for a violation of the Eighth Amendment. *Johnson v. Dominguez*, 5 F.4th 818, 825 (7th Cir. 2021). Furthermore, the alleged mishandling of a grievance by an official who did not otherwise participate in the underlying conduct does not state a claim. *Owens v. Hinsley,* 635 F. 3d 950, 953 (7th Cir. 2011).

Count 1 will proceed against Larson and Gerst, Plaintiff's medical providers who have persisted in a course of ineffective treatment for his stomach pain and denied him adequate care for his back and shoulder. *See Berry v. Peterman,* 604 F.3d 435, 441 (7th Cir. 2010). Additionally, once Plaintiff was seen by an outside specialist for his stomach pain, the instructions of the specialist were not followed. Accordingly, he has stated a claim for deliberate indifference against Larson and Gerst.

Count 1 will also proceed against Morganthaler, Hvarre, and Issacs. Plaintiff claims that he notified these Defendants on several occasions about the deficiencies in the medical care he was receiving, but they failed to act and ensure that he received proper and timely treatment. *See Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015).

---

[2] *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

Count 1 will also proceed against Wexford. Plaintiff claims that Wexford has practices and policies that resulted in the delay and denial of care, such as guidelines that recommend that medical staff maintain a "healthy amount of doubtful suspicion" about inmate complaints, using in house treatment methods before sending an inmate out for specialty care no matter the symptoms, and a medication refill policy that results in delays in obtaining refills and prescriptions. These allegations are sufficient to state a claim. *See, e.g., Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004).

### MOTIONS FOR RECRUITMENT OF COUNSEL

Plaintiff has filed two motions seeking court recruited counsel (Doc. 3, 10), which are **DENIED.**[3] Along with his motions, Plaintiff has included letters from three firms declining representation. Accordingly, he appears to have made reasonable efforts to retain counsel on his own. With respect to his ability to pursue this action pro se, Plaintiff expresses concern about his ability to handle discovery, specifically collecting documents and taking depositions. He states that this case involves complex medical issues that span over three years, and he will most likely need medical experts. Nonetheless, the Court finds that Plaintiff can proceed pro se, at least for now. Plaintiff's pleadings demonstrate an ability to construct coherent sentences and relay information to the Court. Discovery on the merits has not yet commenced, and Plaintiff appears competent to try this matter without representation at this early stage in the case.

### DISPOSITION

For the reasons states above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** will proceed against Morganthaler, Hvarre, Wexford, Isaacs, Larson, and Gerst. All claims against Akbright, Smith, and Jane Doe are **DISMISSED without prejudice**.

---

[3] In evaluating Plaintiff's motions, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) and related authority.

The Clerk of Court is **DIRECTED** to terminate them as parties on the docket.

Because Plaintiff's claims involve allegations regarding his medical care, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court shall prepare for Morganthaler, Hvarre, Wexford, Isaacs, Larson, and Gerst the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is directed to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require the defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants only need to respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not

independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   February 6, 2024**

    *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.